**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**5:18-cv-5-FDW**
**(5:12-cr-49-FDW-DSC-1)**

| | | |
|---|---|---|
| **MARTIN MARTINEZ SALDANA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct

Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

### I.    BACKGROUND

### A.   Petitioner participates in selling crystal methamphetamine.

Between 2007 and 2012, Petitioner Martin Martinez Saldana sold large quantities of

crystal methamphetamine to customers in Ashe County, North Carolina and Western Virginia.

By 2012, law enforcement officers were investigating Petitioner as part of a larger investigation

into methamphetamine trafficking in the region.  United States v. Saldana, 664 F. App'x 326,

328 (4th Cir. 2016), cert. denied, 137 S. Ct. 1353 (2017).  After employing confidential

informants to make purchases of crystal methamphetamine from two of Petitioner's customers,

Danny Eller and Bobby Shore, investigators obtained a search warrant for the men's residences,

where the investigators found methamphetamine and firearms.  Id.  Eller and Shore agreed to

cooperate in the investigation.  Id.  Eller informed investigators that Petitioner was his source for

methamphetamine and that Jose Pina, who rented a trailer from Petitioner and lived on

Petitioner's property, worked for Petitioner as a courier and conducted methamphetamine

transactions on Petitioner's behalf when Petitioner was in Mexico. (Crim. Case No. 5:12-cr-49-FDW-DCK-1, Trial Tr. at 98, 288-90, 405-06, 410, 444).[1]

After he began cooperating with investigators, Eller twice bought crystal methamphetamine from Pina. Saldana, 664 F. App'x at 328. Following the second controlled buy, Pina stopped responding to Eller's attempts to reach him, prompting investigators to send Eller to Petitioner's property on December 11, 2012, to try to buy methamphetamine from either Petitioner or Pina. Id. Eller was unable to buy methamphetamine from Petitioner, but he was able to record a conversation with him, in which Petitioner told him that it was "too hot" and that Eller should "lay low." Id.

The next day, Shore recorded a conversation with Petitioner. Id. During this conversation, Petitioner, who traveled frequently to Mexico, told Shore that he would be returning to Mexico the following day because it was "too hot" as a result of law enforcement seizures and arrests and directed Shore not to tell anyone he was leaving. Id. Concerned that Petitioner would not return from Mexico, investigators immediately obtained a search warrant for Petitioner's home and an adjacent property that Petitioner also owned. Id.; see also United States v. 148 Ervin Houck Dr., No. 3:12MJ327 (W.D.N.C. Dec. 20, 2012), Doc. Nos. 1 (148 Ervin Houck Dr.) and 2 (178 Ervin Houck Dr.). During their search, investigators found four firearms, including an unregistered, short-barreled shotgun; ammunition; electrical tape, cellophane, and dryer sheets used in packaging methamphetamine; latex gloves; and cell phones, two of which were on Petitioner's person. Saldana, 664 F. App'x at 328-29.

---

[1] Because all four volumes of the trial transcript are numbered consecutively, see Doc. Nos. 131-34, references to the transcript are to "Trial Tr." followed by the relevant page numbers.

In February 2013, Harmon interviewed Pina, who told the agents where Petitioner had hidden money and methamphetamine on his property. (Id. at 329; Crim. Case No. 5:12-cr-49-FDW-DCK-1, Trial Tr. at 76-77). Based on this new information, agents obtained state search warrants to search Petitioner's property. (Crim. Case No. 5:12-cr-49-FDW-DCK-1, Trial Tr. at 76-77; see also Civ. Doc. No. 3-1, 3-2: Gov. Civ. Exs. 1 & 2, Search Warrants, In re 148 and 178 Ervin Houck Road (N.C. Sup. Ct. Feb. 12, 2013) (Yearick, Etoyle, M.J.)). During this search, investigators found nearly $50,000 in cash contained in PVC pipes buried in the ground, several ounces of methamphetamine wrapped in electrical tape and cellophane with a dryer sheet, PVC tubes used for stashing controlled substances or currency, magazines for a sub-machine gun, and ammunition. Saldana, 664 F. App'x at 329; see also (Crim. Case No. 5:12-cr-49-FDW-DCK-1, Trial Tr. at 78, 240-48).

**B. A jury convicts Petitioner of participating in a methamphetamine-trafficking conspiracy and a firearm offense, and this Court imposes a within-Guidelines term of life in prison.**

On December 13, 2012, a federal grand jury indicted Petitioner and charged him with conspiracy to distribute and to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846 (Count One); possession of a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c) (Count Two); possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Three); possession of a firearm as a person convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9) (Count Four); and possession of a short-barreled shotgun that was not registered to him, in violation of 26 U.S.C. §§ 5841, 5861(c) and (d), and 5871 (Count Five). (Crim. Case No. 5:12-cr-49-FDW-DCK-1, Doc. No. 50: First Superseding Bill of Indictment). The Government later

dismissed without prejudice the charges under 18 U.S.C. § 922(g) (Counts Three and Four).  (Id., Doc. Nos. 62-63).

On December 26, 2012, and on January 29, 2013, this Court sua sponte issued orders to continue the matter because it had been joined for trial with a co-defendant who had not been severed and as to whom the time for trial had not run.  (Id., Doc. Nos. 12, 19).  On March 19, 2013, June 4, 2013, and July 31, 2013, Petitioner's counsel moved for continuances, citing the voluminous discovery in the case and the additional time needed to prepare for trial.  (Id., Doc. Nos. 39, 45, 47).  This Court granted each motion, specifically stating in each order that the ends of justice outweighed the best interest of the public and the defendant to a speedy trial.  (Id., Doc. Nos. 12, 19, 40, 46, 48).

On August 20, 2013, a grand jury returned a first superseding indictment, which charged Petitioner with the same offenses, but did not name Pina in the charges.  (Id., Doc. No. 50).  On September 23, 2013, Petitioner's counsel moved for another continuance.  (Id., Doc. No. 53).  This Court denied the motion.  (Id., Doc. No. 56).  On October 8, 2013, counsel filed a sealed motion for a continuance, which this Court granted.  (Id., Doc. Nos. 58, 59).  On November 22, 2013, Petitioner's counsel filed another sealed motion for a continuance, which this Court also granted.  (Id., Doc. Nos. 60, 61).  Again, the Court stated in both orders granting these two continuances that the ends of justice outweighed the best interest of the public and the defendant to a speedy trial.  (Id., Doc. Nos. 59, 61).

The day before trial, this Court issued a sequestration order, prohibiting witnesses from talking with anyone who was or might become a witness "about any subject matter related to this trial."  (Id., Doc. No. 77).  Trial began on March 4, 2014.  (Id., Doc. No. 131).  During the trial,

the Government presented testimony from law enforcement officers and five cooperating witnesses about methamphetamine transactions conducted with or on Petitioner's behalf.

Clara Jean Caudell testified that she and Petitioner were friends and that he had sold her at least half an ounce of methamphetamine for about five years before her arrest. (Id., Trial Tr. at 327, 330-34). Caudell testified that Petitioner had several couriers who worked for him and that she had picked up drugs from Petitioner's house on one occasion. (Id. at 335-36). On cross-examination, Caudell admitted that she cooperated by taking responsibility for her part in the offense conduct and that whether she received a reduction in her sentence was up to the judge. (Id. at 344). On redirect, she identified her plea agreement, and the Government moved it into evidence. (Id. at 346-47; Gov. Trial Ex. 24).

Eller testified that he had pleaded guilty to his involvement in the methamphetamine-trafficking conspiracy and that Petitioner had been a co-conspirator. (Id., Trial Tr. at 394). Eller stated that he began buying half an ounce of methamphetamine every two or three weeks from Petitioner, but he eventually worked up to buying about an ounce every three or four weeks. (Id. at 402-03, 445). Eller would use some of the methamphetamine and sell some of it. (Id. at 407). Eller also testified about his visit to Petitioner while wearing a wire, when Petitioner told him that it had been "hot" and that he should "lay low." (Id. at 411, 415-17). Eller testified on cross-examination that he had a plea agreement, but that he had not been promised anything for testifying. (Id. at 431-32). He admitted that he was hoping that he would receive "[s]ome kind of help." (Id. at 433). The Government moved to admit Eller's plea agreement on redirect, id. at 447, and Eller testified that the plea agreement required him to tell the truth and that it would be up to the judge to decide what sentence to impose, id. at 448-49; Gov. Tr. Ex. 20.

James Hawkins also testified that he sold methamphetamine for Petitioner. (Id., Trial Tr. at 494). On cross-examination, he stated that he was hoping to "get a little time off" for cooperating, but he had not been sentenced yet. (Id. at 503-04, 509). On re-direct, Hawkins testified that he had not been promised anything for his cooperation, that he was required to tell the truth, and that the judge would decide his sentence. (Id. at 509, 511).

Shore also identified Petitioner as a co-conspirator in his methamphetamine-trafficking activities. (Id. at 456). Shore testified that he bought half an ounce of methamphetamine from Petitioner once a month for about a year before he increased his monthly purchases to one ounce. (Id. at 458-59). He later bought four to six ounces a month. (Id. at 459).

Pina testified that he worked for Petitioner and that Petitioner told him where to hide Petitioner's money, including where to bury it. (Id. at 480-82, 488). Pina identified April Blevins as his girlfriend. (Id. at 489). He admitted telling her where she could find some of the money on Petitioner's property and that she took money that she believed was Petitioner's and used it to buy a truck. (Id. at 488-89).

Petitioner did not present any evidence in his defense. (Id. at 529). The jury convicted Petitioner of conspiracy to distribute methamphetamine and possession of a firearm made in violation of the National Firearms Act, but acquitted him of possessing a firearm in furtherance of a drug-trafficking offense (Count Two). (Id., Doc. No. 81: Jury Verdict). This Court sentenced Petitioner to life imprisonment for the conspiracy offense and to a concurrent sentence of 120 months of imprisonment for the firearm offense and ordered him to pay a $200 special assessment. (Id., Doc. No. 113: Judgment).

Petitioner appealed, challenging the denial of his motion for a judgment of acquittal and his life sentence. Saldana, 664 F. App'x at 328. The Fourth Circuit affirmed his conviction and

sentence.  Id.  The Fourth Circuit held that there was "more than sufficient evidence to convict Saldana" of the conspiracy offense, citing his leadership of the drug-trafficking operation, the testimony at trial, as well as the recorded conversations with Petitioner and the evidence found during the searches of his property.  Id. at 331.

Petitioner timely filed the present motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255, arguing that this Court lacked subject-matter jurisdiction, that his speedy trial, double jeopardy, and Fourth Amendment rights were violated, that the Government engaged in prosecutorial misconduct, and that he received ineffective assistance of counsel.  The Government filed its Response on March 12, 2018, and Petitioner filed his Reply on April 2, 2018, in which he asserts essentially the same arguments made in his original motion to vacate and supporting memorandum.  (Doc. Nos. 3, 6).

## II.     STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

### A. Petitioner's Contentions that this Court lacked jurisdiction over Petitioner's offenses.

Petitioner first contends that the Controlled Substances Act is unconstitutional and that this Court lacked subject-matter jurisdiction over the case because there was no evidence that the

drug offense had any effect on interstate commerce.  See (Civ. Doc. No. 1-1 at 7-9, 12-28).  This

first claim is without merit, as it is well settled that the Controlled Substances Act's regulation of

interstate and intrastate drug-related activities is constitutional under the Commerce Clause.  See

Gonzales v. Raich, 545 U.S. 1, 15, 19, 22 (2005) (upholding use of Controlled Substances Act to

regulate even intrastate activities).

Petitioner also contends that this Court lacked jurisdiction because he was deprived of his

Sixth Amendment right to counsel during his initial appearance.  (Civ. Doc. No. 1-1 at 10-11

(citing Johnson v. Zerbst, 304 U.S. 458, 467-68 (1938)).  The Court also rejects this claim.  The

docket entry for Petitioner's initial appearance reflects that he requested and was granted the

appointment of counsel Emily Marroquin at his initial appearance.  (Crim. Case No. 5:12-cr-49-

FDW-DCK-1, Doc. Entry dated Dec. 13, 2012).  Because Petitioner was represented by counsel

throughout the proceedings below, he was not deprived of his right to counsel, and this Court

maintained jurisdiction over the proceedings.  Thus, his challenges to this Court's jurisdiction are

denied.

### B. Petitioner's Fourth Amendment claim.

Petitioner next contends that his Fourth Amendment rights were violated when he was

arrested without a warrant or probable cause and two cell phones were taken from him.  (Civ.

Doc. No. 1-1 at 29-32).  He maintains that no incriminating evidence was found on the cell

phones, but the fact that he had two phones was used to show his involvement in drug

trafficking.  (Id. at 29).  He also contends that officers exceeded the scope of the search warrant

for his property, by searching connected properties for which they did not have a warrant.  (Id. at

31).

Petitioner's argument is without merit. Where a movant has had a full and fair opportunity to litigate his Fourth Amendment claims, he may not assert a Fourth Amendment claim on collateral review. See Stone v. Powell, 428 U.S. 465, 481-82 (1976); Boggs v. Bair, 892 F.2d 1193, 1199-1200 (4th Cir. 1989) (holding full and fair opportunity to address claim existed even where petitioner asserted a change in the law). Petitioner could have raised these claims in this Court or on appeal. Because he had a full and fair opportunity to raise these claims, but he did not do so, he is barred from raising these claims on collateral review. See Stone, 428 U.S. at 481-82.

Even if this Court could consider these claims, they are without merit. Law enforcement officers obtained search warrants for Petitioner's property at 178 Ervin Houck Drive and 148 Ervin Houck Drive. These search warrants specifically authorized seizing any "cellular telephones" found at the property, and the application for the warrants noted that cell phones often contained evidence of drug trafficking, such as pictures. (Crim. Case No. 5:12-cr-49-FDW-DCK-1, Federal search warrants (see esp. Doc. No. 1 & 1-2 at 3, 13; Doc. No. 2 & 2-2 at 3, 13)). Petitioner was at his residence when officers executed the search warrants, and officers seized the two cell phones that Petitioner was carrying. Officers arrested Petitioner, and this Court issued an arrest warrant the following day. See (Id., Doc. No. 2).

After Pina subsequently revealed that Petitioner had hidden more cash and drugs on his property, officers obtained state search warrants for the two properties that they had previously searched, as well as the curtilage of these properties. (Id., Trial Tr. at 76-78; State Search Warrants). It was during this subsequent search on February 12, 2013, that the officers found additional cash, drugs, and ammunition. (Id., Trial Tr. at 78).

Officers had probable cause to arrest Petitioner given the information on which the search warrants were issued, namely that he was involved in drug trafficking. Petitioner has not shown that any evidence obtained during the original search was not located on the two properties covered by the search warrants. Furthermore, the additional state search warrants that officers obtained before the second search of Petitioner's properties included the curtilage of those properties. See (Id., State Search Warrants). Accordingly, Petitioner's contention that the officers exceeded the scope of the warrants lacks merit. Because the searches were made pursuant to valid warrants and there was probable cause to arrest Petitioner, there was no Fourth Amendment violation. Moreover, even if any areas outside the scope of the search warrants were searched, Petitioner has not shown that such a search infringed on his Fourth Amendment rights. See United States v. Dunn, 480 U.S. 294, 299-304 (1987) (holding that the Fourth Amendment protects the curtilage of a home, but not open fields).

**C. Petitioner's claims of a speedy trial violation, double jeopardy violation, and prosecutorial misconduct.**

**1. Procedural Bar**

Petitioner next brings claims of a speedy trial violation, double jeopardy violation, and prosecutorial misconduct. A § 2255 motion is not a substitute for a direct appeal. See United States v. Frady, 456 U.S. 152, 165 (1982). Claims of error that could have been raised on direct appeal, but were not, are procedurally barred unless the petitioner shows both cause for the default and actual prejudice, or demonstrates that he is actually innocent of the offense. See Bousley v. United States, 523 U.S. 614, 621-22 (1998); United States v. Bowman, 267 F. App'x 296, 299 (4th Cir. 2008). "[C]ause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel."

United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999).  As the Fourth Circuit has made clear, futility does not establish cause to excuse a procedural default.  See Whiteside v. United States, 775 F.3d 180, 185 (4th Cir. 2014) (en banc) (noting that "alleged futility cannot serve as 'cause' for a procedural default in the context of collateral review").

To show actual prejudice, a petitioner must demonstrate that errors in the proceedings "worked to his actual and substantial disadvantage" and were of constitutional dimension.  See Frady, 456 U.S. at 170.  To show actual innocence, a petitioner must demonstrate that he "has been incarcerated for a crime he did not commit."  United States v. Jones, 758 F.3d 579, 584 (4th Cir. 2014), cert. denied, 135 U.S. 1467 (2015).  Actual innocence is based on factual innocence and "is not satisfied by a showing that a petitioner is legally, but not factually, innocent."  See Mikalajunas, 186 F.3d at 494.

Petitioner has not previously argued that his speedy trial and double jeopardy rights were violated, nor has he previously asserted that there was prosecutorial misconduct at trial. Although he contends that he received ineffective assistance of counsel, which could establish cause, because his claims have no merit he cannot show ineffective assistance.  He also has not made a showing of actual prejudice or actual innocence.  Therefore, he cannot overcome the procedural bar.

**2. Merits of Petitioner's claims of a speedy trial violation, double jeopardy violation, and prosecutorial misconduct.**

The Court further finds that, even if Petitioner's claims were not procedurally barred, they would fail on the merits. Petitioner first argues that he was denied his statutory and constitutional right to a speedy trial because this Court granted seven continuances, but failed to put findings on the record regarding why the continuances were warranted.  (Civ. Doc. No. 1-1 at

37).  Petitioner contends that this resulted in the Court losing jurisdiction over his case.  (Id. at 38).

Because Petitioner did not move to dismiss the indictment before his trial, he has waived the right to bring a Speedy Trial Act challenge.  See 18 U.S.C. § 3162(a)(2) (providing that where a defendant fails to move to dismiss an indictment prior to trial, he waives the right bring a Speedy Trial Act claim).  Even if Petitioner had not waived this right, he cannot show a violation of the Speedy Trial Act because, in every motion granting a continuance, this Court determined that the ends of justice outweighed the best interest of the public and the defendant to a speedy trial.  Id. § 3162(h)(7)(A).  Accordingly, the time during which the continuances ran was excludable, and Petitioner's trial commenced well under the 70-day period provided for in the Speedy Trial Act.

Under the Sixth Amendment to the Constitution, a defendant has a due process right to a speedy trial.  To establish a constitutional speedy trial violation, a defendant must show that a balance of four factors weighs in his favor: (1) whether there was an uncommonly long delay before trial; (2) whether the defendant or the government is more to blame for any delay; (3) whether the defendant asserted the right to a speedy trial; and (4) whether the defendant was prejudiced by the delay.  United States v. Thomas, 55 F.3d 144, 149 (4th Cir. 1995).  Here, Petitioner cannot show that the factors weigh in his favor.  The trial commenced less than a year and three months after Petitioner's indictment.  The Court ordered the first two continuances, but Petitioner requested all of the other continuances.  He never asserted his right to a speedy trial to the Court, and he does not allege any prejudice from the delay in his trial.  Rather, the defense motions for a continuance show that it was in Petitioner's best interests for the trial to be continued so that his defense could be properly prepared and presented.  See (Crim. Case No.

5:12-cr-49-FDW-DCK-1, Doc. Nos. 39, 45, 47, 58, 60). Because Petitioner has not shown that the speedy trial factors weigh in his favor, he cannot show that he was denied his right to a speedy trial.

Next, as to Petitioner's double jeopardy claim, Petitioner argues that his double jeopardy rights were violated because this Court sentenced him to a term of imprisonment and to pay a special assessment. (Civ. Doc. No. 1-1 at 38-39). He contends that this subjected him to multiple punishments for the same offense and that, because he paid the special assessment, this Court should vacate his sentence of imprisonment. (Id. at 39).

The Double Jeopardy Clause protects a defendant against a court imposing multiple punishments for the same offense in a single proceeding. Jones v. Thomas, 491 U.S. 376, 381 (1989). In examining whether multiple punishments have been imposed, a court looks to what punishment the legislature has authorized. (Id.). If the punishment imposed does not exceed that authorized by the legislature, there is no double jeopardy violation. (Id.). The Supreme Court has recognized that where a legislature authorizes punishment by both imprisonment and a fine, "it could not be seriously argued that the imposition of both a fine and a prison sentence in accordance with such a provision constituted an impermissible punishment." Whalen v. United States, 445 U.S. 684, 688 (1980). Here, Petitioner's term of imprisonment was authorized by 21 U.S.C. §§ 846, 841(b) and 26 U.S.C. § 5871, and the special assessment was authorized under 18 U.S.C. § 3013(a)(2)(A). Accordingly, his punishment was authorized by statute and does not violate the Double Jeopardy Clause.

Next, as to Petitioner's prosecutorial misconduct claim, Petitioner asserts that the Government engaged in prosecutorial misconduct by misrepresenting to the jury that the search that uncovered the weapons was lawful. (Civ. Doc. No. 1-1 at 33-34). To establish prosecutorial

misconduct, a defendant must demonstrate: (1) that the conduct of the prosecutor was improper, and (2) that the improper conduct prejudicially affected his substantial rights so as to deprive him of a fair trial.  See United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993).  "[I]t 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.'"  Darden v. Wainwright, 477 U.S. 168, 180 (1986) (quoting the lower court's opinion).  Improper remarks by a prosecutor violate the Constitution only if the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden, 477 U.S. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).  "Courts must conduct a fact-specific inquiry and examine the challenged comments in the context of the whole record."  Bennett v. Stirling, 842 F.3d 319, 323 (4th Cir. 2016).  Here, because officers found the weapons during the execution of the first search warrants at Petitioner's residence, the search was lawful, and this argument lacks merit.

Petitioner also alleges that the Government presented false evidence or failed to correct false testimony from cooperating witnesses.  In particular, he contends that Claudell falsely testified that she was not promised a reduced sentence for her cooperation; that Hawkins misled the jury as to the scope of the incentives that he was receiving, which Petitioner contends included immunity from a mandatory life sentence pursuant to Section 851; and that Eller falsely testified that he had not been promised anything for his testimony.  (Id. at 34-35).  Petitioner contends that this prejudiced how the jury viewed the testimony of these witnesses.  (Id.).

Petitioner presents no evidence to support his claims that the witnesses testified falsely.  Therefore, these claims will be dismissed as conclusory.  See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss Section 2255 claims based on vague and conclusory allegations).  As the record shows, the testimony of these witnesses and

their plea agreements are consistent.  See (Crim. Case No. 5:12-cr-49-FDW-DCK-1, Trial Tr. at 344, 346-47, 431-33, 447-49, 503-04, 509; Gov. Tr. Exs. 20, 24; Plea Agrmt., United States v. Hawkins, No. 5:13cr27 (W.D.N.C. June 10, 2013), Doc. No. 9: Hawkins Plea Agrmt.).  Namely, the witnesses could potentially receive a reduction of sentence for substantial assistance, but no promise of such a reduction had been made, and the final determination of each sentence was left to the Court.  Hawkins's plea agreement also notes that he had no prior felony drug convictions, so his statutory range of punishment was ten years to life.  (Crim. Case No. 5:13cr27, Doc. No. 9 at ¶ 4).  Moreover, the record also establishes that it was the defense that aggressively solicited testimony regarding any incentives for testifying and that the Government responded by admitting the plea agreements for Caudell and Eller, which showed the parameters of their agreements.  (Crim. Case No. 5:12-cr-49-FDW-DCK-1, Trial Tr. at 344, 346-47, 431-33, 447-49, 503-04, 509).  The prosecutor's conduct was proper and did not prejudicially affect Petitioner's substantial rights.

Petitioner also argues that the Government ignored the sequestration order and allowed witnesses who were incarcerated to be housed and transported together, which provided them with the opportunity to collaborate regarding their testimony.  (Civ. Doc. No. 1-1 at 36).  Because Petitioner presents no evidence that any witnesses violated the Court's sequestration order, this argument fails.  See Dyess, 730 F.3d at 359-60.

In sum, because Petitioner has not shown cause and prejudice for his procedural default of his speedy trial, double jeopardy, and prosecutorial misconduct claims, these claims will be dismissed.[2]  Alternatively, these claims are denied on the merits.

---

[2]  In addition to being waived and without merit, Petitioner's Fourth Amendment claim also is procedurally barred.

**D. Petitioner's ineffective assistance of counsel claims.**

Petitioner next argues that his attorney provided ineffective assistance by not challenging alleged Fourth Amendment violations; by not investigating or calling April Blevins as a witness; and by not requesting a buyer-seller instruction. He also asserts that appellate counsel was deficient for not raising these issues on appeal and that counsels' errors were cumulative.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

**1. Petitioner's contention that counsel was ineffective for failing to file a motion to suppress.**

Petitioner first contends that counsel was ineffective for failing to file a motion to suppress. Specifically, Petitioner argues that counsel should have challenged his arrest, the search of his property, and the search of his cell phone. (Civ. Doc. No. 1-1 at 29-31). To establish ineffective assistance based on counsel's failure to file a motion to suppress, a defendant must show both deficient performance and prejudice. There is no deficient performance where counsel's determination not to litigate a motion to suppress is reasonable. See Walker v. United States, No. RWT-14-0536, 2015 WL 4638069, at *2 (D. Md. July 31, 2015) (unpublished). Further, a petitioner cannot establish prejudice unless he proves that the "Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

As discussed above, law enforcement officers had probable cause to arrest Petitioner when they executed the search warrants. The search warrants provided probable cause to search Petitioner's property. Accordingly, it was objectively reasonable for counsel not to challenge Petitioner's arrest or the searches of his property. Nor has Petitioner shown that a motion to suppress would likely have succeeded. Thus, he has not shown deficient performance or prejudice with respect to the first two claims.

When Petitioner was arrested, officers seized his phone and examined it for evidence. He contends that this search was not within the scope of the warrant and, therefore, his attorney was deficient for not challenging it. (Civ. Doc. No. 1-1 at 41). The search warrants authorized law enforcement officers to seize "cellular telephones." In addition, when Petitioner's phone was seized, law enforcement officers did not need a warrant to obtain information from a phone seized incident to an arrest. See United States v. Murphy, 552 F.3d 405, 411 (4th Cir. 2009)

(holding contents of cellular telephone seized pursuant to an arrest could be searched without a warrant). Although Riley v. California, 134 S. Ct. 2473 (2014), overruled Murphy, that decision was not issued until a year and a half after Petitioner's arrest and several months after his trial. Searches before Riley are admissible under the good-faith exception to the exclusionary rule. See United States v. Hall, 629 F. App'x 504, 506 (4th Cir. 2015). Therefore, Petitioner cannot establish deficient performance or prejudice, because he cannot show that there is a reasonable probability that a challenge to the search of his cell phone would have succeeded. See Fernandez-Gradis v. United States, No. 3:14CV575, 2016 WL 5660346, at *7 (W.D.N.C. Sept. 28, 2016) (unpublished) (denying ineffective assistance claim based on counsel's failure to move to suppress evidence taken from a cell phone where Riley had not been decided at the time of trial).

**2. Petitioner's contention that counsel was ineffective for failing to call Pina's girlfriend as a witness.**

Petitioner next contends that counsel failed to investigate and call Pina's girlfriend, April Blevins, as a witness at trial. (Civ. Doc. No. 1-1 at 42). He asserts that Blevins could have provided exculpatory evidence by testifying that Pina had "control" of the drugs and money found during the searches. (Id.). Complaints of ineffective assistance based on uncalled witness are disfavored because the presentation of witness testimony is a matter of strategy and the nature of such testimony is speculative. Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985). To demonstrate prejudice based on a claim of uncalled witnesses, a petitioner "must show not only that this testimony would have been favorable, but also that the witness would have testified at trial." Id.; see Howard v. Lassiter, No. 1:12cv453, 2013 WL 5278270, at *3 (M.D.N.C. Sept. 18, 2013) (unpublished) (holding claim of uncalled witnesses failed where

petitioner did not specify the identity of the witnesses, the substance of their anticipated testimony, or how this testimony would have produced a different outcome at trial).  A defendant claiming ineffective assistance of counsel based on an uncalled witness should make a proffer of testimony from the uncalled witness.  See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990).

Petitioner's claim is without merit.  Petitioner does not argue that Pina owned the drugs or money, nor has he provided a statement from Blevins.  Even if Blevins had testified that Pina controlled the drugs and money found during the searches, this would not have impacted the jury's finding of Petitioner's guilt as to the offenses.  Petitioner does not contend that Pina had control of the firearms found in Petitioner's residence.  Furthermore, since Pina was a co-conspirator, Petitioner still would have been responsible for the drugs and money found on his property, even if Pina controlled these items.  Additionally, the co-conspirators testified that Pina was working for Petitioner.  Accordingly, Petitioner cannot show that counsel was deficient or that there is a reasonable probability that calling Blevins as a witness would have changed the result at trial.  See Strickland, 466 U.S. at 687-88, 694.

**3. Petitioner's contention that counsel was ineffective for failing to request a buyer-seller instruction.**

Petitioner next argues that his attorney should have requested a buyer-seller instruction because the evidence did not support finding a conspiracy.  (Civ. Doc. No. 1-1 at 39-40).  He contends that he was prejudiced by the failure to request this instruction because there is a reasonable probability that the outcome would have been different had this instruction been given to the jury.  (Id. at 40).

A district court does not err in refusing to give a buyer-seller defense instruction where the facts show that a relationship went beyond a buy-sell transaction. United States v. Mills, 995 F.2d 480, 485 (4th Cir. 1993). Here, several witnesses testified to their ongoing agreements to buy methamphetamine from Petitioner, including some who resold the drugs to other people, and others testified that they sold methamphetamine for Petitioner. The quantities involved in the offense also supported a finding of distribution. As the Fourth Circuit determined, ample evidence supported Petitioner's involvement in a conspiracy, so counsel was not deficient for failing to request a buyer-seller instruction, nor can Petitioner show prejudice where it would not have been proper to give such an instruction. See Saldana, 664 F. App'x at 331; Mills, 995 F.2d at 485.

Finally, Petitioner's catch-all assertion that counsel provided ineffective assistance by not raising his jurisdictional, speedy trial, double jeopardy, or prosecutorial misconduct challenges also fails. See (Doc. No. 1-1 at 34, 43-44). As previously shown, none of these claims have merit, so counsel was not deficient and Petitioner was not prejudiced by the failure to raise these issues.

### 4. Petitioner's claim of ineffective assistance of appellate counsel.

Petitioner contends that he received ineffective assistance of appellate counsel for failing to raise various issues on appeal. Courts should ordinarily only find ineffective assistance for failure to raise claims on appeal when "ignored issues are clearly stronger than those presented." Smith v. Robbins, 528 U.S. 259, 288 (2000) (internal citation and quotation omitted). Appellate counsel is not required to assert all non-frivolous issues on appeal. Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985). Rather, it "is the hallmark of effective appellate advocacy" to winnow out weaker arguments and to focus on more promising issues. Smith v. Murray, 477

U.S. 527, 536 (1986).  Thus, "[a] decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy."  Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).  Additionally, the petitioner still bears the burden to show that there is a reasonable probability that but for counsel's failure to raise an issue on appeal, the result of the proceeding would have been different, i.e., he would have prevailed on appeal.  See Robbins, 528 U.S. at 285-86.

Because none of Petitioner's claims have merit, he cannot show that his appellate counsel was deficient for failing to raise these issues on appeal, nor can he show prejudice.  Accordingly, his claim of ineffective assistance of appellate counsel is dismissed.

**5. Petitioner's claim of cumulative error.**

Finally, Petitioner argues that the combined effects of alleged errors by counsel require a new trial.  (Doc. No. 1 at 43-44).  Because Petitioner has not shown that any of his claims have merit, there was no cumulative error.  Moreover, his claims of ineffective assistance are not subject to cumulative error review.  Cf. Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. 1998) (claims of ineffective assistance of counsel must be evaluated individually, not cumulatively).  Therefore, this claim is denied.

**IV.     CONCLUSION**

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1.      Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. §
        2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules

Governing Section 2254 and Section 2255 Cases, this Court declines to issue a

certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>,

537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must

demonstrate that reasonable jurists would find the district court's assessment of

the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473,

484 (2000) (when relief is denied on procedural grounds, a petitioner must

establish both that the dispositive procedural ruling is debatable and that the

petition states a debatable claim of the denial of a constitutional right).

Signed: April 11, 2018

Frank D. Whitney
Chief United States District Judge